UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

HARLEY KULKIN,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )          2:09-CV-02261-PMP-LRL
                                        )
TOWN OF PAHRUMP, HEATH                  )          O R D E R
CAMPBELL, WILLIAM A.                    )
KOHBARGER, PAULA GLIDDEN,               )
COUNTY OF NYE, and DEPUTY               )
SHERIFF CANNON,                         )
                                        )
            Defendants.                 )
_____)

        Presently before the Court is Defendants Town of Pahrump, Heath Campbell,

William Kohbarger, Paula Glidden, County of Nye, and Deputy Sheriff Cannon's Motion

for Summary Judgment (Doc. #33), filed on June 20, 2011.  Plaintiff Harley Kulkin filed an

Opposition (Doc. #36) on August 15, 2011.  Defendants filed a Reply (Doc. #46) on

October 24, 2011.

        Also before the Court is Plaintiff's Motion for Leave to File Surreply (Doc. #47),

filed on November 4, 2011.  Defendants filed an Opposition (Doc. #51) on November 18,

2011.  Plaintiff filed a Reply (Doc. #52) on November 25, 2011.

**I. BACKGROUND**

        Each year the Town of Pahrump (the "Town"), in Nye County, Nevada, holds the

Pahrump Fall Festival (the "Festival").  (Defs.' Mot. for Summ. J. ("Defs.' MSJ") (Doc.

#33), Ex. 2.)  In 2009, the Town charged a reduced price of $180 per booth for non-profit

vendors with proof of non-profit status.  (<u>Id.</u>)  The Town charged $250 per booth for all other vendors.  (<u>Id.</u>)

Plaintiff Harley Kulkin participated in the Festival for about ten years.  (Defs.' MSJ, Ex. 1 at 60.)  Each year Plaintiff rented two booths, sharing one booth with the Boy Scouts of America and using the other booth for socializing and political activities.  (<u>Id.</u> at 43, 60-62, 76.)  At the end of the 2008 Festival, Plaintiff registered and paid the non-profit rate for two booths for the 2009 Festival.  (<u>Id.</u> at 83-84; Defs.' MSJ, Ex. 3.)  Plaintiff's application listed as vendor "Harley Kulkin/Boy Scouts."  (Defs.' MSJ, Ex. 3.)  His application also included the following statement: "I, Harley Kulkin representing self/scouts have read the rules and regulations pertaining to this application.  I/we understand that any Violation of the rules or regulations could result in a suspension of my/our rights to set up a Booth; at this time or any future events."  (<u>Id.</u>)  The rules and regulations for the 2009 application stated that "[n]onprofit charitable organization applicants must submit written proof that they are legitimately working on behalf of nonprofit/charitable organization, i.e. letter from I.R.S. or appropriate agency."  (Defs.' MSJ, Ex. 2.)  Plaintiff's 2009 application also provided: "The following items must be received prior to 8/1/09 or a space will not be assigned . . . 501(c)(3) letter (if applicable)" and "DEADLINE FOR ACCEPTANCE AND FEES IS AUGUST 1, 2009."  (Defs.' MSJ, Ex. 3.)

Prior to the 2009 Festival, Plaintiff made plans to share one of his booths with the Boy Scouts and to share the other booth with Recalls-R-Us, which Plaintiff testified is a non-profit organization that promotes the recall of local government officials.  (Defs.' MSJ, Ex. 1 at 45, 62-64.)  Plaintiff's plans to attempt to recall Commissioner Gary Holis were announced in the Pahrump Valley Times before the Festival.  (<u>Id.</u> at 285-86.)  Defendants William A. Kohbarger ("Kohbarger"), Pahrump Town Manager, and Heath[1] Campbell

---

[1] This Defendant is incorrectly named as Health Campbell.  The Court will direct the Clerk of Court to correct the case caption.

("Campbell"), Vendor Chair for the 2009 Festival, testified that they did not know about Plaintiff's plans to share his booth with Recalls-R-Us, and Plaintiff did not list Recalls-R-Us on his application. (Id. at 64, 80; Defs.' MSJ, Ex. 5 at 8-9, Ex. 11 at 15.)

In 2009, Kohbarger instructed Tiffany Young ("Young"), who served as Vendor Chair for the 2009 Festival prior to Campbell, to enforce the application requirement that non-profit vendors provide proof of 501(c)(3) tax exempt status (the "documentation policy"). (Defs.' MSJ, Ex. 5 at 10-11.) Young notified registered non-profit vendors by mail of the need to provide proof of 501(c)(3) status. (Defs.' MSJ, Ex. 4.) The notice also stated that if proof of non-profit status was not received by August 1, 2009, either Young would return the application or charge the vendor the higher rate. (Id.) The notice addressed to Plaintiff was dated June 10, 2009. (Id.) Plaintiff claims that he never received notice, but Plaintiff does not dispute that his application included the requirement that non-profit vendors provide proof of non-profit status. (Defs' MSJ, Ex. 1 at 69, 71-72.) Additionally, Defendant Paula Glidden ("Glidden"), Executive Chairman of the 2009 Festival, testified that in late summer Plaintiff called Glidden and asked whether he had to pay the higher rate for his booth, and Glidden responded, "That's right, to my knowledge you have to pay that." (Defs.' MSJ, Ex. 6 at 44, Ex. 11 at 14.)

Plaintiff did not provide proof of 501(c)(3) tax exempt status for himself, the Boy Scouts, or Recalls-R-Us, and he did not pay the higher rate for either booth. (Defs.' MSJ, Ex. 1 at 69, 119, Ex. 3.) On September 24, 2009, Plaintiff arrived at the Festival to set up his booths. (Defs.' MSJ, Ex. 1 at 42-43, 48-49.) Campbell, who took over as Vendor Chair after Young quit, approached Plaintiff and asked Plaintiff to come to the office trailer to get his paperwork. (Id. at 49; Defs.' MSJ, Ex. 6 at 36, Ex. 11 at 13-14.) Plaintiff followed Campbell to the office trailer. (Defs.' MSJ, Ex. 1 at 49-50.) Once inside, Campbell informed Plaintiff that he needed to pay the higher rate for one of his booths or provide proof of 501(c)(3) tax exempt status. (Id. at 50-51, 182; Defs.' MSJ, Ex. 11 at 20.)

1    Defendants did not attempt to enforce the policy as to the booth Plaintiff planned to share

2    with the Boy Scouts.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") (Doc. #36),

3    Ex. B at 10.)  Plaintiff refused to pay the higher rate, and Plaintiff asked for a refund but

4    Campbell refused.  (Defs.' MSJ, Ex. 1 at 51, Ex. 11 at 20-21.)  The two men argued,

5    Plaintiff walked out of the office trailer, and Campbell exited the trailer after Plaintiff.

6    (Defs.' MSJ, Ex. 1 at 51-52, Ex. 11 at 20-26.)  The parties disagree over which direction

7    Campbell walked when he exited the trailer, but the parties agree that Plaintiff and

8    Campbell continued arguing.  (Defs.' MSJ, Ex. 1 at 51-52, 54-55, Ex. 8, Ex. 11 at 26, 34-

9    35.)  Plaintiff testified that he pushed Campbell and grabbed Campbell "on the shoulder and

10   around the neck" in a "firm grip."  (Defs.' MSJ, Ex. 1 at 54-55.)  Plaintiff then said, "Leave

11   me alone," and walked away.  (Id. at 55.)  Campbell testified, "he grabbed me around the

12   neck, I pushed him away, he puts down his glasses, doubled up his fists and I dropped my

13   hands and I said, 'Go ahead.'"  (Defs.' MSJ, Ex. 11 at 40.)  Patrick Sullivan ("Sullivan"), an

14   independent witness to the incident, observed the incident from the time Plaintiff and

15   Campbell entered the trailer until Plaintiff left the park.  (Defs.' MSJ, Ex. 1 at 201, Ex. 12.)

16        Plaintiff then went to the Town office to obtain permission to occupy his booth at

17   the non-profit rate.  (Defs.' MSJ, Ex. 1 at 55, 95-96.)  The Town office denied his request,

18   and Plaintiff returned to the park.  (Id. at 55-56.)  Meanwhile, Deputy Sheriff Cannon

19   ("Deputy Cannon") responded to the scene and took written statements regarding the

20   incident from Campbell and Sullivan.  (Defs.' MSJ, Ex. 7 at 20; Exs. 8-9.)  Deputy Cannon

21   observed red marks on Campbell's throat.  (Defs.' MSJ, Ex. 12.)  When Plaintiff returned to

22   the park, Deputy Cannon arrested Plaintiff for felony battery by strangulation and

23   misdemeanor provoking an assault.  (Id.)  Shortly after the incident, a local news station

24   interviewed Campbell and Campbell's neck was not visibly red.  (Defs.' MSJ, Ex. 1 at 169;

25   Pl.'s Notice of Manual Filing (Doc. #39).)  In the interview, Campbell stated, "The rules

26   state that it's gotta be a 501(c)(3)."  (Pl.'s Notice of Manual Filing at 01:42-01:45.)  The

4

interviewer asked Campbell if he had filled out an assault report, and Campbell replied, "Yep, I just got finished, that way I could come talk to you guys." (Id. at 02:35-02:41.) Campbell also wrote a letter to the editor of the Pahrump Valley Times describing the incident. (Defs.' MSJ, Ex. 1 at 130-32; Pl.'s Opp'n, Ex. B at 51.)

In addition to occupying two booths, Plaintiff had planned to drive a bus in the Festival parade. (Defs.' MSJ, Ex. 1 at 183.) The day after his arrest, Glidden—under Kohbarger's direction—advised Plaintiff that he was not allowed to participate in the Festival parade. (Defs' MSJ, Ex. 5 at 7, Ex. 6 at 34-35.) Kohbarger testified that because "a staff member was assaulted . . . he was to be removed from all activities involving the Fall Festival." (Defs.' MSJ, Ex. 5 at 7.) Glidden testified that Kohbarger told her Plaintiff was excluded from the parade because "we didn't want any more distraction from the events and we didn't want any more trouble." (Defs.' MSJ, Ex. 6 at 34-35.)

Several vendors were permitted to participate in the 2009 Festival at the reduced rate without providing proof of 501(c)(3) tax exempt status. Although the application rules and regulations for the 2009 application require proof of non-profit status generally, the application itself specifically requires a 501(c)(3) letter for non-profit vendors. (Defs.' MSJ, Ex. 2-3.) Additionally, Campbell testified that a "federal 501(c)(3)" was required to qualify for the reduced rate. (Pl.'s Opp'n, Ex. B at 12.) Of the vendors that paid the reduced rate, five vendors provided proof of 501(c)(3) status, ten vendors provided proof of state non-profit status, and four vendors paid the reduced rate without providing proof of any type of non-profit status prior to the Festival.

| Vendor | Rate paid prior to Festival | Documentation provided prior to Festival | Exhibit |
|---|---|---|---|
| Boys & Girls Clubs of Southern Nevada | Non-profit | Proof of 501(c)(3) status | Pl.'s Opp'n, Ex. A |
| Fontana Jr. All American Football | Non-profit | Proof of 501(c)(3) status | Pl.'s Opp'n, Ex. A |

| Homeland Heroes, Inc. | Non-profit | Proof of 501(c)(3) status | Pl.'s Opp'n, Ex. A |
|---|---|---|---|
| Rotary Club of Pahrump Valley | Non-profit | Proof of 501(c)(3) status | Pl.'s Opp'n, Ex. A |
| The Present Truth | Non-profit | Proof of 501(c)(3) status | Pl.'s Opp'n, Ex. A |
| Knights of Columbus | Non-profit | Proof of NV sales/use tax exempt status | Pl.'s Opp'n, Ex. A |
| Progressive Choices Inc. | Non-profit | Proof of NV sales/use tax exempt status | Pl.'s Opp'n, Ex. A |
| Child Evangelism Fellowship | Non-profit | Proof of NV sales/use tax exempt status and NV non-profit corporation | Pl.'s Opp'n, Ex. A |
| Disabled American Veterans | Non-profit | Proof of NV non-profit corporation | Pl.'s Opp'n, Ex. A |
| Fifth Judicial District Drug Court | Non-profit | NV non-profit articles of incorporation | Pl.'s Opp'n, Ex. A |
| First Choice Pregnancy Center | Non-profit | Proof of NV non-profit corporation | Pl.'s Opp'n, Ex. A |
| Nye County Democrat Central Committee | Non-profit | Proof of NV non-profit corporation | Defs.' MSJ, Ex. 4 |
| Pahrump Elks Lodge Drug Awareness | Non-profit | Proof of NV non-profit corporation | Pl.'s Opp'n, Ex. A |
| Pahrump Senior Center | Non-profit | Proof of NV non-profit corporation | Pl.'s Opp'n, Ex. A |
| Soka Gakkai International | Non-profit | Proof of CA non-profit corporation | Pl.'s Opp'n, Ex. A |
| Harley Kulkin/Boy Scouts | Non-profit | None | Pl.'s Opp'n, Ex. A |
| New Hope Christian Academy | Non-profit | None | Pl.'s Opp'n, Ex. A |
| Nye County Cinderella Girls | Non-profit | None | Pl.'s Opp'n, Ex. A |
| Pahrump Valley Republican Women | Non-profit | None | Pl.'s Opp'n, Ex. A |

///

///

///

1   Campbell testified that he did not enforce the policy against the Boy Scouts

2   because it is common knowledge that the Boy Scouts of America is a non-profit

3   organization.  (Pl.'s Opp'n, Ex. B at 10.)  As to  New Hope Christian Academy ("New

4   Hope"), Defendants offered a letter from New Hope, which references a tax exempt letter.

5   (Defs.' Reply to Pl.'s Opp'n ("Defs.' Reply") (Doc. #46), Ex. 20-10.)  However,

6   Defendants did not produce the actual tax exempt letter.  Next, the Cinderella Girls and the

7   Pahrump Valley Republican Women ("PVRW") paid the difference between the two rates

8   after the Festival.  (Defs.' MSJ, Ex. 11 at 14, 17; Defs.' Reply, Ex. 20.)

9   Prior to the incident described above, Cora Bishop ("Bishop"), former campaign

10   manager for Commissioner Gary Holis (one of the local officials in Pahrump that Plaintiff

11   sought to recall), paid to run an advertisement in a local newspaper criticizing Plaintiff's

12   recall efforts and listing Plaintiff's criminal history.  (Defs.' MSJ, Ex. 16; Pl.'s Mot. for

13   Leave to File Surreply ("Surreply") (Doc. #47), Ex. C at 10, 37, 54.)[2]  The advertisement

14

---

15       [2] Plaintiff filed a Motion for Leave to File a Surreply (Doc. #47) on November 4, 2011.

16   Plaintiff argues he should be given the opportunity to respond to three arguments made by

17   Defendants in their Reply to Plaintiff's Opposition.  First, in their Reply Defendants argued

18   that Patrick Sullivan ("Sullivan"), an independent witness to the incident, is developmentally

19   disabled.  (Pl.'s Mot. for Leave to File Surreply ("Surreply") at i.)  The Court cannot evaluate

20   the credibility of Sullivan's testimony on summary judgment. Anderson v. Liberty Lobby, Inc.,

21   477 U.S. 242, 255 (1986).  As such, the Court will deny Plaintiff's request to file a surreply on

22   this issue as moot.   Second, in their Reply, Defendants pointed out an error in Bishop's

23   deposition transcript, attached as Exhibit F to Plaintiff's Opposition.  (Id. at i.)  Plaintiff now

24   seeks to substitute a corrected transcript of Bishop's deposition (Surreply, Ex. C), and

25   Defendants do not object.  (Defs.' Opp'n to Surreply (Doc. #51) at 3.)  The Court will grant

26   Plaintiff's Motion on this issue and consider the corrected transcript of Bishop's deposition.

Third, in their Reply Defendants offered a chart summarizing the vendor applications attached

as Exhibit A to Plaintiff's Opposition.  (Surreply at ii.)  Although the chart summarizes new

evidence offered by Defendants in their Reply as to New Hope and PVRW, this new evidence

does not change the vendors' classifications as  vendors that paid the reduced rate without

providing documentation of non-profit status prior to the Festival.  The remainder of the chart

summarizes evidence previously offered by Plaintiff.  Therefore, the Court will decline to

consider this new evidence along with the chart, rendering a surreply on this issue moot.

was placed anonymously on Bishop's doorstep, and Bishop did not know who created the advertisement. (Surreply, Ex. C at 33-34, 76.) The advertisement read: "How many chances do you want to give Mr. Kulkin!" (Defs.' MSJ, Ex. 16.) After Plaintiff's arrest on September 24, 2009, Bishop revised the advertisement to include the following: "Kulkin Arrested on felony battery at Fall Festival on 9/24/09." (Defs.' MSJ, Ex. 1 at 148-51, Ex. 17; Surreply, Ex. C at 40-43, 77-78.) Bishop distributed the revised advertisement at the 2009 Festival. (Surreply, Ex. C at 17, 44-45.) Bishop testified that she discussed the advertisement with four individuals, but Bishop did not discuss the advertisement with any of the Defendants. (Id. at 43-44, 69-73, 90-91.)

After the 2009 Festival, the State charged Plaintiff with misdemeanor battery, and Plaintiff entered a plea of guilty to misdemeanor battery. (Defs.' MSJ, Ex. 1 at 41, 134, Ex. 13 at 4.) Plaintiff contends that after this incident, he experienced loss of sleep and appetite, but he never sought treatment. (Defs' MSJ, Ex. 1 at 127-28.) Plaintiff also asserts that his business income declined after the 2009 Festival but that he had noticed a decline prior to the 2009 Festival. (Id. at 138-39, 142-43.) Moreover, Plaintiff testified that he suffered harm to his reputation. (Id. at 128-38.) In 2010, Plaintiff was elected to the Pahrump Town Board. (Id. at 144-45.)

Plaintiff filed suit in this Court, asserting claims against the Town, Campbell, Kohbarger, Glidden, County of Nye (the "County"), and Deputy Cannon pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution for municipal liability (count one); violation of free speech under the First Amendment (count two); violation of the Equal Protection Clause of the Fourteenth Amendment (count three); violation of substantive due process under the Fifth and Fourteenth Amendments (count four); violation of the Fourth Amendment for unlawful search, seizure, and arrest (count five); malicious prosecution (count six); and injunctive and declaratory relief (count eight). Plaintiff also asserts claims against Defendants for violation of the Racketeer Influenced

and Corrupt Organizations Act ("RICO") (count seven); slander, defamation, and libel (count nine); civil conspiracy (count ten); negligent hiring, training, and supervision (count eleven); and intentional infliction of severe mental distress (count twelve). Plaintiff has voluntarily dismissed his RICO claim.[3] Defendants now move for summary judgment on all remaining claims against them. Plaintiff opposes the Motion.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson, 477 U.S. at 248. An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

## III. DISCUSSION

### A. Section 1983 Claims

To establish liability under § 1983, a plaintiff must allege the violation of a right secured by the U.S. Constitution and laws of the United States, and must show that the

---

[3] During Plaintiff's deposition, Plaintiff's counsel stated that she intended to amend the Complaint to drop the RICO claim. (Defs.' MSJ, Ex. 1 at 145.) Defendants' counsel relied on this representation and did not examine Plaintiff on the RICO claim. (Id. at 145-46.) Although Plaintiff has not amended his Complaint, Defendants argue in their Motion for Summary Judgment that Plaintiff has stipulated to dismiss his RICO claim. (Defs.' MSJ at 5.) Plaintiff does not dispute that he stipulated to dismiss his RICO claim. Therefore, the Court will dismiss Plaintiff's RICO claim against Defendants.

alleged deprivation was committed by a person acting under color of state law.  Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003); 42 U.S.C. § 1983.  "The 'color of law' requirement of § 1983 is treated as the equivalent of the 'state action' requirement under the Constitution."  Jensen v. Lane Cnty., 222 F.3d 570, 574 (9th Cir. 2000).

        The state action requirement differs depending on whether the actor is a public employee or a private individual or entity.  "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  West v. Atkins, 487 U.S. 42, 50 (1988).  But when the actor is a private entity, the question becomes whether the private entity's actions are fairly attributable to the State.  Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001).  Actions of a private entity regulated by the State may be fairly attributable to the State when "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)).  Additionally, a private entity's actions may be fairly attributable to the State when the State has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  Id. at 1004-05 (citations omitted).  Moreover, a private entity's actions are fairly attributable to the State when the private entity exercises powers that are "traditionally the exclusive prerogative of the State."  Id. at 1005 (citing Jackson, 419 U.S. at 353).  But simply serving the public is not enough to render a private entity a state actor.  Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982).  For example, running a town festival is not traditionally the exclusive prerogative of the State.  Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 956 (9th Cir. 2008); United Auto Workers v. Gaston Festivals, Inc., 43 F.3d 902, 907-08 (4th Cir. 1995).

///

But even if a state actor violates a plaintiff's constitutional rights while acting under color of law, qualified immunity may apply.  To allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under § 1983.  Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling on a qualified immunity defense, a court considers two questions:  (1) whether the facts alleged—taken in the light most favorable to the party asserting the injury—show the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established.  Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).  A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).  The court should make this second inquiry "in light of the specific context of the case, not as a broad general proposition."  Saucier, 533 U.S. at 200.  The plaintiff bears the burden of showing that the right at issue was clearly established.  Sorrels, 290 F.3d at 969.

### 1. Color of Law

Here, a reasonable jury could find that Kohbarger acted under color of law when he decided to enforce the documentation policy and exclude Plaintiff from the parade because he did so while acting in his official capacity as Town Manager.  Likewise, a reasonable jury could find that Deputy Cannon acted under color of law because he investigated the incident and arrested Plaintiff while acting in his official capacity as an employee of the Nye County Sheriff's Office.

However, it is less clear whether Campbell and Glidden acted under color of law.  Plaintiff alleges that Campbell and Glidden are officials of the Pahrump Fall Festival.  It is

unclear from the record whether the Pahrump Fall Festival is operated by the Town or a private entity.  The vendor application lists the Town's website, requests that payment be remitted to the Town, and that the Town be named as an additional insured.  (Defs.' MSJ, Ex. 2.)  Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has raised a genuine issue of material fact as to whether Campbell and Glidden were public employees.  As such, a reasonable jury could find that Campbell acted under color of law when he enforced the documentation policy and made statements to the media regarding the incident because he did so while acting in his official capacity as Vendor Chair of the Festival.  Similarly, a reasonable jury could find that Glidden acted under color of law when she informed Plaintiff of Kohbarger's decision to exclude Plaintiff from the parade because she did so in her official capacity as Executive Chairman of the Festival. Accordingly, genuine issues of material fact exist as to whether Campbell, Kohbarger, Glidden, and Deputy Cannon acted under color of state law as required by § 1983.

### 2. Free Speech Violation - Count Two

Defendants argue they are entitled to summary judgment on Plaintiff's First Amendment claim because Defendants did not retaliate against Plaintiff for his political speech.  Specifically, Defendants contend that the decision to enforce the documentation policy was not motivated by Plaintiff's political activities.  Defendants also argue that neither the documentation policy nor the decision to exclude Plaintiff from the parade were content-based regulations in violation of the First Amendment.  Defendants maintain that if Plaintiff had complied with the documentation policy and had not assaulted Campbell, Plaintiff could have engaged in political speech at the Festival.  But even if the decision to exclude Plaintiff was a content-based regulation, Defendants maintain that the Town had a compelling interest in maintaining order and protecting the safety of its employees, volunteers, and the public.

Plaintiff does not directly respond to Defendants' argument that they did not

retaliate against Plaintiff for his political speech.  Rather, Plaintiff contends that he can show a content-based limitation on his speech by circumstantial evidence.  Plaintiff offers as circumstantial evidence the advertisements criticizing Plaintiff, Bishop's deposition, Kohbarger's decision to enforce the documentation policy against Plaintiff but not the Boy Scouts or the PVRW, and Kohbarger's decision to exclude Plaintiff from the parade.  Plaintiff also argues that Defendants did not have a compelling interest in excluding Plaintiff from the parade because Plaintiff could not have made trouble by driving a bus in the parade and Plaintiff was innocent until proven guilty of the charges for which he was arrested.

### a.  Retaliation

To establish a First Amendment retaliation claim, a plaintiff must show the defendant "deterred or chilled" the plaintiff's speech and "such deterrence was a substantial or motivating factor in [the defendant's] conduct." Menotti v. City of Seattle, 409 F.3d 1113, 1155 (9th Cir. 2005) (citation omitted).  For the first element, a plaintiff need not show his speech actually was deterred. Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999).  Rather, the plaintiff must show only that the defendant's acts would "chill or silence a person of ordinary firmness from future First Amendment activities." Id. (citation omitted).  The second element may be established through direct or circumstantial evidence. Id. at 1300-01.

Plaintiff has failed to provide any evidence or argument that the following would deter a person of ordinary firmness from future First Amendment activities: (1) being required to pay a difference of $80 to participate in the Festival or (2) being excluded from the parade for assaulting a Festival official.  Similarly, Plaintiff fails to argue that Plaintiff's political speech was a motivating factor in enforcing the documentation policy and excluding Plaintiff from the parade.

Plaintiff suggests without articulating that the following circumstantial evidence

demonstrates that Defendants' actions were motivated by a desire to deter Plaintiff's political activities:  the advertisements criticizing Plaintiff, Bishop's deposition, Kohbarger's decision to enforce the documentation policy against Plaintiff but not the Boy Scouts or the PVRW, and Kohbarger's decision to exclude Plaintiff from the parade. However, Plaintiff merely speculates without offering any evidence that Defendants participated in creating or distributing the advertisements criticizing Plaintiff.

To the contrary, Bishop testified that none of the Defendants were involved. (Surreply, Ex. C at 43-44, 69-73.)  Next, Plaintiff has not offered evidence that Kohbarger decided to enforce the documentation policy to deter Plaintiff from conducting the recall. In fact, Kohbarger testified that he had no knowledge of Plaintiff's recall plans prior to the Festival. (Defs.' MSJ, Ex. 5 at 8-9.)  Plaintiff offers no evidence to the contrary.  Although the evidence shows that prior to the Festival, Defendants failed to enforce the requirement that non-profit vendors provide proof of 501(c)(3) status against several vendors, the evidence also shows that Defendants made an effort to enforce the requirement by sending out notices to registered non-profit vendors.  (Defs.' MSJ, Ex. 4; Pl.'s Opp'n, Ex. A.) Plaintiff has not offered evidence that Defendants selectively enforced the policy against only those vendors whose political activities it sought to deter.  Lastly, Plaintiff has not offered evidence that Kohbarger's decision to exclude Plaintiff from the parade was motivated by a desire to deter Plaintiff's political activities.  Rather, Kohbarger and Glidden testified that the decision was motivated by a desire to prevent another incident similar to the incident that led to Plaintiff's arrest on September 24, 2009.  (Defs.' MSJ, Ex. 5 at 7, Ex. 6 at 34-35.)  Therefore, no reasonable jury could find that Defendants' acts would chill or silence a person of ordinary firmness from future First Amendment activities, nor could a reasonable jury find that deterring Plaintiff's political speech was a substantial or motivating factor in Defendants' conduct.

///

b.  Content-Based Regulation

Content-based regulations on speech are presumptively invalid.  <u>Davenport v.</u> <u>Wash. Educ. Ass'n</u>, 551 U.S. 177, 188 (2007).  But determining whether a regulation is content-based or content-neutral can be difficult.  <u>Turner Broad. Sys., Inc. v. FCC</u>, 512 U.S. 622, 642 (1994).  "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 791 (1989).  Generally, regulations that distinguish between speech based on the viewpoint expressed are content-based.  <u>Turner</u> <u>Broad. Sys., Inc.</u>, 512 U.S. at 643.  But regulations that confer benefits or impose burdens on speech regardless of the viewpoint expressed are content-neutral.  <u>Id.</u>  Likewise, a regulation that serves purposes separate from the content of the speech is generally content-neutral, even if the regulation has an incidental effect on some speakers but not others. <u>Ward</u>, 491 U.S. at 791 (<u>citing</u> <u>Renton v. Playtime Theatres, Inc.</u>, 475 U.S. 41, 47-48 (1986)).  To rebut the presumption of invalidity, a content-based regulation on speech (1) must be narrowly tailored to serve a compelling state interest and (2) there must be no less restrictive alternative available.  <u>United States v. Playboy Entm't Grp., Inc.</u>, 529 U.S. 803, 813 (2000).

No reasonable jury could find that the documentation policy or the decision to exclude Plaintiff from the parade were content-based regulations.[4]  The documentation policy applies to all non-profit vendors regardless of their viewpoint.  Moreover, the documentation policy did not have the incidental effect of restricting Plaintiff's speech because Plaintiff could have participated in the Festival if he had been willing to pay the

---

[4]  Plaintiff does not argue that the documentation policy or the decision to exclude Plaintiff from the parade were content-neutral regulations that cannot withstand intermediate scrutiny.  Therefore, the Court will not address this issue.

$80 difference for his booth.  In other words, the documentation policy did not keep

Plaintiff out of the Festival, Plaintiff kept himself out of the Festival by refusing to comply.

But even if the documentation policy had the incidental effect of restricting Plaintiff's

speech, such incidental effects do not transform a content-neutral regulation into a content-

based regulation.

Plaintiff offers Hoye v. City of Oakland, as support for his position that the

documentation policy is a content-based regulation.  653 F.3d 835 (9th Cir. 2011).  Hoye

stands for the proposition that a regulation that appears neutral on its face may be

considered a content-based regulation if the government has a policy of enforcing the

regulation against only one side of a public debate.  Id. at 849, 851.  But here, as discussed

above, Plaintiff has presented no evidence that Defendants were aware of Plaintiff's recall

plans prior to the Festival.  (Defs.' MSJ, Ex. 1 at 64, 80, Ex. 5 at 8-9, Ex. 11 at 15.)

Plaintiff has failed to offer any evidence that Defendants selectively enforced the policy

against only those vendors with viewpoints different from Defendants' viewpoints.

Therefore, no reasonable jury could find that the documentation policy is a content-based

restriction on speech.

Second, unlike the plaintiff in Hoye, Plaintiff has not offered evidence that the

decision to exclude Plaintiff from the parade was based on a regulation, statute, ordinance,

policy, rule, or the like.  Even if the decision were based on some type of regulation,

Plaintiff has not offered evidence of selective enforcement based on the speaker's viewpoint

or the content of the speech.  To the contrary, Defendants have offered evidence that the

decision was made because Plaintiff assaulted a staff member, and Defendants did not want

any distractions or trouble during the parade.  (Defs.' MSJ, Ex. 5 at 7, Ex. 6 at 34-35.)

These justifications are unrelated to Plaintiff's viewpoint and the content of his speech.

Thus, no reasonable jury could find that the decision to exclude Plaintiff from the parade

was a content-based regulation on speech.  Accordingly, viewing the facts in the light most

favorable to Plaintiff, no genuine issues of material fact remain for trial, and the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's First Amendment claim.

### 3. Equal Protection Violation - Count Three

Defendants argue they are entitled to summary judgment on Plaintiff's equal protection claim because Defendants did not intentionally treat Plaintiff differently from others similarly situated. Defendants assert that Plaintiff was similarly situated to other for-profit vendors, and no for-profit vendors were permitted to participate in the Festival at the non-profit rate. Plaintiff responds that Defendants intentionally treated him differently from others similarly situated with no rational basis for the difference in treatment. Specifically, Plaintiff asserts that he was similarly situated to the other non-profit vendors, and Defendants had no rational basis for charging him the additional $80.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Pursuant to the Equal Protection Clause, the government must treat all similarly situated persons alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). "If the ordinance does not concern a suspect or semi-suspect class or a fundamental right, we apply rational basis review and simply ask whether the ordinance is rationally-related to a legitimate governmental interest." Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037, 1047 (9th Cir. 2002) (internal quotation marks and citation omitted). Additionally, a plaintiff may bring an equal protection claim based on a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The parties agree the applicable standard of review here is rational basis. Plaintiff has raised an issue of fact that Defendants intentionally treated Plaintiff differently from others similarly situated and that there is no rational basis for the difference in

treatment.  As an initial matter, no genuine issue of material fact remains as to whether Plaintiff planned to donate one of his two booths to the Boy Scouts.  Although Plaintiff argues he reserved two booths to be combined and used as one large booth, Plaintiff does not argue that both booths were to be used by the Boy Scouts only.  The record indicates that Plaintiff listed two vendors on his 2009 application:  Harley Kulkin and the Boy Scouts.  (Defs.' MSJ, Ex. 3.)  The record also indicates that prior to the 2009 Festival, Plaintiff made arrangements to share one of the booths with the Boy Scouts and one with Recalls-R-Us.  (Defs.' MSJ, Ex. 1 at 45, 62-64.)  Plaintiff did not notify Defendants of his plans to share a booth with Recalls-R-Us, nor did Plaintiff provide proof of 501(c)(3) status for Recalls-R-Us.  (Defs.' MSJ, Ex. 1 at 69, 119, Ex. 3.)  Therefore, Defendants properly treated one booth as reserved for Plaintiff and the other booth as reserved for the Boy Scouts.

Accordingly, the proper comparison is between Plaintiff and the other vendors that did not provide proof of non-profit status prior to the Festival.  The following four vendors participated at the reduced rate without providing proof of non-profit status (state or federal):  Boy Scouts, New Hope, Cinderella Girls, and PVRW.[5]  Defendants did not enforce the documentation policy against these four vendors, but Defendants did enforce the documentation policy against Plaintiff.  Defendants have failed to offer a rational basis for the difference in treatment.

Additionally, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has demonstrated that his rights were clearly established such that a reasonable official would know he was treating similarly situated individuals differently.  No reasonable official could believe that he could enforce the documentation policy against

---

[5] Although Defendants offer evidence that Cinderella Girls and PVRW paid the difference between the two rates after the Festival, this evidence does not change Cinderella Girls' and PVRW's classifications as vendors that paid the reduced rate without providing documentation of non-profit status prior to the Festival.

Plaintiff prior to the Festival, and not enforce it against other vendors that had paid the reduced rate without providing the necessary documentation.  Consequently, genuine issues of material fact remain as to whether Defendants violated Plaintiff's equal protection rights and the related question of whether Defendants are entitled to qualified immunity.  The Court will therefore deny Defendants' Motion for Summary Judgment on Plaintiff's equal protection claim.

### 4.  *Substantive Due Process Violation - Count Four*

Defendants argue they are entitled to summary judgment on Plaintiff's substantive due process claim because Plaintiff was not deprived of a federally protected right and even if he was, Defendants' actions were not clearly arbitrary and capricious. Plaintiff's response is less than clear, but as far as the Court can discern, Plaintiff argues that Defendants engaged in an "intentional, unjustified, and unprovoked assault."  (Pl.'s Opp'n at 36.)  According to the Ninth Circuit in Shah v. County of Los Angeles, "[a]n 'intentional unjustified, [and] unprovoked' assault by a prison guard on a prisoner may be a violation of substantive due process."  797 F.2d 743, 746 (9th Cir. 1986).  But Plaintiff makes no attempt to apply Shah to the facts of this case, and in any event, no genuine issue of material fact remains that Plaintiff escalated the incident with Campbell from a verbal dispute to a physical altercation.  (Defs.' MSJ, Ex. 1 at 54-55.)  Accordingly, no genuine issues of material fact remain as to whether Defendants violated Plaintiff's substantive due process rights, and the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's substantive due process claim.

### 5.  *Unlawful Search, Seizure, and Arrest and Malicious Prosecution - Counts Five and Six*

Defendants argue they are entitled to summary judgment on Plaintiff's unlawful search, seizure, arrest, and malicious prosecution claims because Plaintiff's guilty plea establishes probable cause.  Defendants also contend that Plaintiff's guilty plea precludes

his claims under 42 U.S.C. § 1983.  Plaintiff responds that even if he is precluded from arguing that there was no probable cause for his arrest, he is not precluded from arguing that the police used excessive force or from claiming unreasonable search and seizure, trespass, false arrest, or "the host of Plaintiff's other causes of action."  (Pl.'s Opp'n at 36.)  Specifically, Plaintiff argues that his claim for false arrest is viable because the District Attorney did not charge him with either of the charges for which he was arrested.

As an initial matter, Plaintiff has failed to provide any evidence or argument in support of his claim for unlawful search, and Plaintiff did not plead trespass or excessive force in the Complaint.  Therefore, the Court need only address Plaintiff's malicious prosecution claim and Plaintiff's unlawful arrest claim.[6]

First, to prevail on a claim for malicious prosecution, the plaintiff must prove favorable termination of the prior proceeding.  Heck v. Humphrey, 512 U.S. 477, 485 (1994); Lester v. Buchanen, 929 P.2d 910, 912 (Nev. 1996).  Thus, a convicted defendant cannot prevail on a malicious prosecution claim.  Heck, 512 U.S. at 485.  Here, Plaintiff was charged and convicted of misdemeanor battery.  (Defs.' MSJ, Ex. 1 at 41, 134, Ex. 13 at 4.)  Therefore, no genuine issues of material fact remain as to whether Defendants maliciously prosecuted Plaintiff, and Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim.

Second, "[w]hen a plaintiff who has been convicted of a crime under state law seeks damages in a § 1983 suit, 'the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'  If the answer is yes, the suit is barred."  Hooper v. Cnty. of San Diego, 629 F.3d 1127, 1130 (9th Cir. 2011) (quoting Heck, 512 U.S. at 487).  This rule prevents relitigation of the issue of probable cause and avoids collateral attacks on convictions.  Heck, 512 U.S. at 484-86.

_____

[6]  In his Opposition, Plaintiff refers to claims for unlawful seizure, unlawful arrest, and false arrest.  The Court will treat these claims as one claim for unlawful arrest under § 1983.

This rule applies to an unreasonable seizure claim because a judgment in favor of the plaintiff would invalidate the conviction. Id. at 486 n.6.

The arrest offense need not be the same as the charged offense. "[I]f a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam). By pleading guilty to a crime, a plaintiff admits each of the facts underlying the crime. United States v. Burke, 694 F.2d 632, 634 (9th Cir. 1982).

Here, Plaintiff was arrested on September 24, 2009 for felony battery by strangulation and misdemeanor provoking an assault. (Defs.' MSJ, Ex. 12.) The District Attorney charged Plaintiff with misdemeanor battery to which Plaintiff pleaded guilty. (Defs.' MSJ, Ex. 1 at 41, 134, Ex. 13 at 4.) By doing so, Plaintiff admitted the facts underlying the charge. The facts underlying the misdemeanor battery charge were the same facts underlying the arrest offenses of felony battery by strangulation and misdemeanor assault. Plaintiff has not presented evidence raising a genuine issue of material fact that the misdemeanor battery charge arose out of a different incident. Therefore, if the Court were to hold there was no probable cause to arrest Plaintiff for felony battery by strangulation and misdemeanor assault, that holding would imply that there was no probable cause to charge Plaintiff with misdemeanor battery, which would invalidate the misdemeanor battery charge. Therefore, Plaintiff's unlawful arrest claim is barred. No genuine issues of material fact remain as to whether Defendants unlawfully searched, seized, or arrested Plaintiff, or maliciously prosecuted Plaintiff; thus, the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's unlawful search, seizure, arrest, and malicious prosecution claims.

*6.  Municipal Liability - Count One*

Defendants argue they are entitled to summary judgment on Plaintiff's municipal

liability claim because municipal liability attaches only when a constitutional violation has occurred, and here no constitutional violation has occurred.  Plaintiff responds that constitutional violations have occurred and thus municipal liability attaches, and the Town and the County had a longstanding policy of violating the rights of political opponents of local officials.

In determining municipal liability, a court considers two questions: (1) whether a constitutional violation occurred, and (2) whether "the municipality itself cause[d] the constitutional violation through execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Ulrich v. City & Cnty. of S.F., 308 F.3d 968, 984 (9th Cir. 2002) (citation omitted).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

Moreover, a plaintiff may establish a municipal entity is liable for its omissions where the municipality's "deliberate indifference led to its omission and . . . the omission caused [a municipal] employee to commit the constitutional violation." Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1186 (9th Cir. 2002).  To establish liability through omission, a plaintiff must show:  (1) that a municipal employee violated the plaintiff's rights; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) that these policies were the "moving force" behind the employee's violation of the plaintiff's constitutional rights. Id. at 1194.  "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." Id. at 1186.  Unlike the deliberate indifference standard for an individual employee's liability, this standard does not include a subjective component. Id. at 1195.  A policy, or lack thereof, is the "moving force" if the municipality

"could have prevented the violation with an appropriate policy."  Id. at 1194.

Here, Plaintiff has failed to raise a genuine issue of material fact that municipal liability exists for any of Plaintiff's § 1983 claims.  On Plaintiff's First Amendment claim, no reasonable jury could find that the Town or the County had a policy or custom of retaliating against political opponents.  Plaintiff testified that an individual named Ted Holmes was arrested for expressing disagreement with government officials, but Plaintiff has not offered any evidence of the outcome of a civil rights suit against the Town or the County.  (Defs.' MSJ, Ex. 1 at 113.)  Plaintiff also offered a printout from PACER showing pending civil cases against the County, but Plaintiff has not authenticated the printout, nor does the printout indicate whether any of the pending cases include civil rights claims. (Pl.'s Opp'n, Ex. J.)  Likewise, no reasonable jury could find that the Town or the County had a policy or custom of enforcing content-based regulations.  As discussed above, Plaintiff has not offered evidence of any content-based regulations.  Moreover, because Plaintiff has not offered evidence that a policy or custom existed, Plaintiff cannot show the existence of a policy or custom amounting to deliberate indifference to Plaintiff's First Amendment rights.

As to Plaintiff's equal protection claim, no reasonable jury could find that the Town or the County had a policy or custom of treating similarly situated vendors differently.  Plaintiff has not offered evidence that the Town or the County had a policy or custom of enforcing the documentation policy against certain vendors and not others. Although Plaintiff testified that he participated in the Festival for about ten years, the only evidence before the Court of Defendant's unequal enforcement of the documentation policy is from the 2009 Festival.  One instance of enforcing a policy in a certain manner does not constitute a practice of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Thus, this isolated incident cannot support a finding of municipal liability.  Moreover, because Plaintiff has not offered

evidence that a policy or custom existed, Plaintiff cannot show the existence of a policy or custom amounting to deliberate indifference to Plaintiff's equal protection rights.

Next, no reasonable jury could find that the Town or the County had a policy or custom of violating individual's substantive due process rights. As discussed previously, Plaintiff's substantive due process argument is difficult to discern. Plaintiff did not specify who violated his substantive due process rights or how his rights were violated. As such, no reasonable jury could identify from this argument a Town or County policy or custom of violating substantive due process rights. Nor could a reasonable jury find the existence of a policy or custom amounting to deliberate indifference to Plaintiff's substantive due process rights.

Lastly, as to Plaintiff's Fourth Amendment claims, no reasonable jury could find that the Town or the County has a policy or custom of violating individuals' Fourth Amendment rights. As noted above, Plaintiff has offered no evidence of an unlawful search, Plaintiff's unlawful arrest claim is barred, and Plaintiff's malicious prosecution claim fails because Plaintiff was convicted of the crime charged. For these same reasons, no reasonable jury could find the existence of a policy or custom amounting to deliberate indifference to Plaintiff's Fourth Amendment rights. Therefore, no genuine issues of material fact exist as to whether municipality liability exists for the Town or the County on any of Plaintiff's § 1983 claims, and the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's municipal liability claim.

### 7. Injunctive and Declaratory Relief - Count Eight

Defendants argue that Plaintiff's claims for injunctive and declaratory relief must fail because it is unclear what actions continuously interfere with Plaintiff's constitutional rights. Plaintiff does not respond to this argument, but rather rehashes his prior equal protection arguments and asserts that he is entitled to injunctive relief.

Generally a claim for injunctive relief is moot when the injury is not ongoing

because an injunction cannot redress the harm.  Renne v. Geary, 501 U.S. 312, 320 (1991).

However, an exception exists when a defendant's actions are "capable of repetition, yet

evading review."  Roe v. Wade, 410 U.S. 113, 125 (1973) (citation omitted).  This

exception applies when: "(1) the challenged action was in its duration too short to be fully

litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that

the same complaining party would be subjected to the same action again."  Weinstein v.

Bradford, 423 U.S. 147, 149 (1975).

Plaintiff has failed to provide any evidence or argument that his alleged injury is

"capable of repetition, yet evading review."  Plaintiff has not offered evidence that he

participated in the Festival in 2010 or 2011, nor has Plaintiff offered evidence that

Defendants continue to enforce the documentation policy in a way that violates individuals'

constitutional rights.  As such, no genuine issues of material fact exist as to whether

Plaintiff is entitled to injunctive relief.  Additionally, Plaintiff does not oppose Defendant's

Motion for Summary Judgment on Plaintiff's declaratory relief claim.  Consequently, the

Court will grant Defendants' Motion for Summary Judgment on Plaintiff's request for

injunctive and declaratory relief.

### B.  Other Claims

#### 1.  Slander, Defamation, and Libel - Count Nine

Plaintiff argues the following five acts constitute slander, defamation, or libel:

Campbell's television interview, Campbell's letter to the Pahrump Valley Times,

Campbell's neck brace, Plaintiff's arrest and police reports, and the advertisements

criticizing Plaintiff.  In response, Defendants argue they are entitled to summary judgment

on Plaintiff's slander, defamation, and libel claims because Plaintiff has not provided proof

that Campbell made a false statement during the television interview, Plaintiff has not

produced the letter to the Pahrump Valley Times, Campbell's decision to wear the neck

brace was an exaggeration which does not qualify as a defamatory statement, all

information contained in the police reports was true, and Defendants had nothing to do with the advertisements criticizing Plaintiff.

To maintain a defamation claim in Nevada the plaintiff must show "(1) a false and defamatory statement by [a] defendant concerning plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." Pegasus v. Reno Newspapers, 57 P.3d 82, 90 (Nev. 2002) (alteration in original). "A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." Lubin v. Kunin, 17 P.3d 422, 425 (Nev. 2001) (citations omitted). An allegedly defamatory statement must be viewed in the context in which it was made to determine whether the statement is susceptible to a defamatory meaning. Chowdhry v. NLVH, Inc., 851 P.2d 459, 463 (Nev. 1993). "[S]tatements made in good faith furtherance of one's official duties are generally privileged." Jordan v. State ex rel. Dep't of Motor Vehicles & Public Safety, 110 P.3d 30, 48 n.56 (Nev. 2005) (per curiam), abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas, 181 P.3d 670, 672 n.6 (Nev. 2008). Also, statements made to police before the initiation of criminal proceedings are privileged so long as they are made in good faith. Pope v. Motel 6, 114 P.3d 277, 283-84 (Nev. 2005).

First, no reasonable jury could find that Campbell defamed Plaintiff in his television interview. The only statement from the interview that Plaintiff claims is false is Campbell's description of the direction he traveled after he exited the office trailer. (Pl.'s Opp'n at 39.) While Plaintiff suggests the direction Campbell walked proves Campbell provoked him, Plaintiff does not dispute that he and Campbell continued arguing and that he escalated the incident from a verbal dispute to a physical altercation. Thus, even if Campbell lied in the interview about the direction he traveled, this statement does not tend to lower Plaintiff in the estimation of the community. While Campbell's statements

regarding the remainder of the altercation arguably lowered Plaintiff in the estimation of the community, Plaintiff does not contend that any of these statements were false. Even if Campbell's statement about the direction that he traveled was false, Plaintiff has not argued or offered any evidence that Campbell acted negligently or maliciously.

Second, no reasonable jury could find that Campbell defamed Plaintiff by writing a letter to the Pahrump Valley Times because Plaintiff has not produced admissible evidence of the contents of the letter. As a result, Plaintiff has not created a genuine issue of material fact that Campbell made a false and defamatory statement.

Third, no reasonable jury could find that Campbell defamed Plaintiff by wearing a neck brace. Campbell admitted to wearing a neck brace for five to ten minutes. (Pl.'s Opp'n, Ex. B at 60-61.) But Plaintiff offers no admissible evidence that others saw Campbell wearing the neck brace; thus, Plaintiff has not created a genuine issue of fact that Campbell published the defamatory and false statement to a third person.

Fourth, no reasonable jury could find that Deputy Cannon defamed Plaintiff by arresting him and filing an incident report. Nor could a reasonable jury find that Campbell and Sullivan defamed Plaintiff by giving voluntary statements about the incident to Deputy Cannon. Deputy Cannon's statements are subject to a qualified privilege as a police officer carrying out his official duties. Likewise, Campbell's and Sullivan's statements are subject to a qualified privilege because they were made to the police prior to the initiation of criminal proceedings against Plaintiff. Plaintiff has failed to provide any argument or evidence that the statements made by Deputy Cannon, Campbell, and Sullivan were not made in good faith. Specifically, Plaintiff argues that Campbell's statement about which direction he traveled after he exited the office trailer was false, but Plaintiff has not offered evidence that Campbell knew his statement was false. Therefore, no genuine issue of material fact remains as to whether any of the Defendants defamed Plaintiff in making statements about his arrest or in filing reports relating to his arrest.

Lastly, no reasonable jury could find that Defendants defamed Plaintiff by publishing the advertisements criticizing Plaintiff because, as discussed above, Plaintiff has not offered evidence that any of the Defendants were involved in creating or distributing the advertisements.  In summary, no genuine issue of material fact remains as to whether Defendants committed defamation, libel, or slander, and the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's defamation, libel, and slander claims.

### 2. *Negligent Hiring, Training, and Supervision - Count Eleven*

Defendants argue they are entitled to summary judgment on Plaintiff's negligent hiring, training, and supervision claims.  Plaintiff makes no argument and provides no evidence of negligent hiring or supervision.  As such, Plaintiff has failed to raise a genuine issue of material fact, and the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's negligent hiring and supervision claims.  As to the negligent training claim, Plaintiff argues that inadequate training can serve as the basis for municipal liability under § 1983, and here, Defendants' policy of punishing critics demonstrates a need for training on constitutional rights.  As discussed above, Plaintiff has failed to raise a genuine issue of material fact that municipal liability exists for any of Plaintiff's § 1983 claims based on a theory of omission.  Therefore, the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's negligent training claim.

### 3. *Intentional Infliction of Severe Mental Distress - Count Twelve*

Defendants argue they are entitled to summary judgment on Plaintiff's intentional infliction of severe mental distress claim because Plaintiff's claims of lack of sleep and appetite do not rise to the level of severe or extreme emotional distress.  Plaintiff does not respond to this argument; rather, Plaintiff argues that whether Defendants conduct was extreme and outrageous is a question for the jury.

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove: "(1) extreme and outrageous conduct with either the intention of, or reckless

disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation."  Star v. Rabello, 625 P.2d 90, 91-92 (Nev. 1981).  Extreme and outrageous conduct exceeds "all bounds of decency" and is "utterly intolerable in a civilized community."  Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998) (citation omitted).  Although evidence of physical injury is not a requirement for intentional infliction of emotional distress, "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress."  Nelson v. City of Las Vegas, 665 P.2d 1141, 1145 (Nev. 1983).  In the context of a negligence infliction of emotional distress claim, courts have noted that "Insomnia and general physical or emotional discomfort are insufficient to satisfy the physical impact requirement."  Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1387 (Nev. 1998).

Plaintiff makes the following blanket statement in his Opposition:  "[W]hether the extreme and outrageous conduct of Defendants, causing Plaintiff to suffer a well-publicized arrest the day before the popular Fall Festival, is a question for the jury."  (Pl.'s Opp'n at 42-43.)  In the context of his intentional infliction of severe mental distress claim, Plaintiff offers no argument or evidence of (1) extreme and outrageous conduct, (2) severe or extreme emotional distress, or (3) actual or proximate causation.  Even if Plaintiff had opposed Defendants' Motion with any specificity, no reasonable jury could find that Defendants' conduct exceeded all bounds of decency, nor could a reasonable jury find that Plaintiff's allegations of loss of sleep and appetite, for which Plaintiff never sought treatment, amounted to severe or extreme emotional distress.  Accordingly, Plaintiff has failed to raise a genuine issue of material fact, and the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's intentional infliction of severe mental distress claim.

### 4.  Civil Conspiracy - Count Ten

Defendants argue Plaintiff's civil conspiracy claim must fail because under state

law Defendants were not acting as individuals for their individual advantage and Plaintiff has not established that Defendants committed an underlying tort.  Likewise, Defendants argue that under federal law Plaintiff has not established an underlying constitutional violation, nor has Plaintiff established concerted action between the Defendants.  Plaintiff responds by offering the following facts as support for his conspiracy claim:  Glidden and Campbell discussed Plaintiff the day of his arrest; Campbell provoked Plaintiff; Campbell could have obtained assistance from Deputy Baldwin; when asked whether he filled out an assault report, Campbell told a news reporter "Yep, I just got finished, that way I could come talk to you guys"; a report was made so the media could report Plaintiff's arrest; and Plaintiff was arrested but never charged with felony strangulation.

Plaintiff alleges that Defendants engaged in a conspiracy to commit "fraud and unlawful conduct set forth in this Complaint."  (Compl. ¶ 84.)  But Plaintiff cites only federal law in his Opposition to Defendant's Motion for Summary Judgment.  Thus, it is unclear from Plaintiff's Complaint and Opposition whether Plaintiff's civil conspiracy claim is based on state or federal law.  Because of the confusion over whether Plaintiff's conspiracy claim is based on state or federal law, the Court will address both bodies of law.

### a.  State law

Under Nevada law, to establish a claim for civil conspiracy, the plaintiff must show "a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage."  Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 622 (Nev. 1983).  The agreement may be either explicit or tacit.  GES, Inc. v. Corbitt, 21 P.3d 11, 15 (Nev. 2001).  When a plaintiff alleges that an employee conspired with his employer or with other employees, the plaintiff must prove that the employee acted as an individual for his individual advantage and not in his official capacity as an employee.  Collins, 662 P.2d at 622; Laxalt v. McClatchy, 622 F. Supp. 737, 745 (D. Nev. 1985).  A civil conspiracy is not

an independent claim; a plaintiff must show the commission of an underlying tort.  <u>Jordan</u>, 110 P.3d at 51.

Here, even assuming Defendants Campbell, Glidden, and Cannon acted as individuals for their individual advantage, none of Plaintiff's state law claims survive summary judgment and Plaintiff has not pled the elements of fraud.  Thus, Plaintiff has not established the commission of an underlying tort.  Accordingly, no genuine issue of material fact remains as to Plaintiff's civil conspiracy claim under state law.

### b.  Federal law

Under federal law, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights."  <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (<u>quoting</u> <u>Fonda v. Gray</u>, 707 F.2d 435, 438 (9th Cir. 1983)).  Similar to state law, a federal conspiracy claim is not an independent claim; it must be predicated on an actual deprivation of constitutional rights.  <u>Woodrum v. Woodward Cnty.</u>, 866 F.2d 1121, 1126 (9th Cir. 1989).  Each participant in the conspiracy need not know every detail of the conspiracy, but all participants must share a common objective.  <u>United Steelworkers</u>, 865 F.2d at 1541.

Direct evidence of an agreement is rare; thus, an agreement can be inferred from circumstantial evidence if a reasonable jury could conclude that the defendants' conduct was "unlikely to have been undertaken without an agreement."  <u>Mendocino Envtl. Ctr.</u>, 192 F.3d at 1301-02.  On summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Anderson</u>, 477 U.S. at 255.  A justifiable inference must be rational or reasonable, but it need not be "the most likely inference or the most persuasive inference."  <u>United Steelworkers</u>, 865 F.2d at 1542.  The moving party bears the burden to negate inferences of conspiracy that the jury could reasonably draw from the

evidence.  Id. at 1541 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)).

For example, in Adickes, the defendant, a restaurant, refused to serve the plaintiff, a white school teacher, when accompanied by six black students, after which the police arrested the plaintiff for vagrancy.  398 U.S. at 146.  The plaintiff brought suit under § 1983 against the defendant for violation of her equal protection rights and for conspiracy.  Id.  The district court granted the defendant's motion for summary judgment on the conspiracy claim, and the United States Supreme Court reversed.  Id. at 153.  The Supreme Court noted that the plaintiff offered evidence that a policeman was inside the restaurant when the defendant refused to serve her.  Id. at 156-57.  The defendant failed to foreclose this possibility with evidence that the policeman was not inside the restaurant.  Id. at 157.  Given this, the defendant also failed to foreclose the possibility that the policeman and the defendant, or one of the defendant's employees, reached an agreement to refuse service.  Id.  The Supreme Court held that a reasonable jury could infer from the circumstances a "meeting of the minds" to violate the plaintiff's constitutional rights.  Id. at 158-59.

Here, only Plaintiff's equal protection claim survives summary judgment, and thus, only the equal protection claim can serve as a basis for civil conspiracy liability.  Of the circumstantial evidence that Plaintiff offers in the context of his conspiracy claim, only the discussion between Glidden and Campbell the morning before Plaintiff's arrest relates to the equal protection claim.  Specifically, Campbell testified that he had a conversation with Glidden the morning before Plaintiff's arrest but they did not discuss Plaintiff.  (Pl.'s Opp'n, Ex. B at 55.)  Likewise, Glidden testified that she had a conversation with Campbell that morning but they did not discuss Plaintiff.  (Pl.'s Opp'n, Ex. K at 26-30.)  By contrast, Sullivan testified that he witnessed the conversation and heard Glidden tell Campbell that Plaintiff owed $80 and Campbell responded that he would ask Plaintiff for the $80 when he arrived.  (Pl.'s Opp'n, Ex. E at 35.)  Although Defendants questioned Sullivan's credibility in their Reply, at summary judgment, the Court cannot evaluate credibility and all

1   inferences are drawn in favor of Plaintiff.

2   Similar to the plaintiff in Adickes, here, Plaintiff has offered evidence from

3   which a reasonable jury could infer that Campbell and Glidden reached an agreement to

4   treat Plaintiff differently from similarly situated vendors.  In Adickes the defendants did not

5   foreclose the possibility that the policeman and the defendant, or one of the defendant's

6   employees, reached an agreement not to serve the plaintiff because the plaintiff offered

7   evidence that the policeman was present inside the restaurant.  Similarly, here, Defendants

8   have not foreclosed the possibility that Campbell and Glidden reached an agreement to treat

9   Plaintiff differently from similarly situated vendors because viewing the facts in the light

10  most favorable to Plaintiff, Campbell and Glidden were present inside the trailer and they

11  discussed charging Plaintiff the additional $80.  A reasonable jury could find that

12  Defendants agreed to violate Plaintiff's constitutional rights, and the Court will deny

13  Defendants' Motion for Summary Judgment on Plaintiff's civil conspiracy claim as it

14  relates to Plaintiff's equal protection claim with respect to Campbell and Glidden.  Because

15  Plaintiff has not offered evidence that the other Defendants conspired to violate Plaintiff's

16  equal protection rights, the Court will grant Defendants' Motion for Summary Judgment on

17  Plaintiff's civil conspiracy claim as it relates to Defendants Town, Kohbarger, County, and

18  Cannon.

19  **IV.  CONCLUSION**

20  IT IS THEREFORE ORDERED that Defendants Town of Pahrump, Heath

21  Campbell, William Kohbarger, Paula Glidden, County of Nye, and Deputy Sheriff

22  Cannon's Motion for Summary Judgment (Doc. #33) is hereby DENIED in part and

23  GRANTED in part.  The Motion is DENIED as to Plaintiff's equal protection claim and

24  Plaintiff's conspiracy claim as it relates to the equal protection claim with respect to

25  Defendants Heath Campbell and Paula Glidden.  The Motion is GRANTED in all other

26  respects.

1    IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File a Surreply
2  (Doc. #47) is GRANTED as to Plaintiff's request to file a corrected transcript of Cora
3  Bishop's deposition.  The Motion is DENIED in all other respects.
4    IT IS FURTHER ORDERED that the Clerk of Court shall amend the caption to
5  correct the name of Defendant Health Campbell to Heath Campbell.

6
7  DATED:  March 23, 2012

8
9    _____
        PHILIP M. PRO
10       United States District Judge
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26